UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| SMART COMMUNICATIONS COLLIER, INC., <br><br> **Plaintiff,** <br><br> v. <br><br> POPE COUNTY, ARKANSAS, SHERIFF'S OFFICE; and SHERIFF SHANE JONES, in his official and individual capacities, <br><br> **Defendants.** | Civil Action No. 4:20-cv-00368-DPM <br><br> **JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff Smart Communications Collier, Inc. ("Smart") submits this First Amended Complaint against Defendants Pope County, Arkansas Sheriff's Office, and Pope County Sheriff Shane Jones, in his official capacity[1] and in his individual capacity (together, "Pope County" or "Defendants"), as follows:

**Parties, Jurisdiction, and Venue**

1. Plaintiff Smart is a corporation organized under the laws of the State of Florida with its principal place of business located in Pinellas County, Florida.

2. Defendants are the sheriff and sheriff's office of Pope County, Arkansas, located in the Central Division of the Eastern District of Arkansas. The Pope County Sheriff's Office and Sheriff Shane Jones have been served with process in this action and have appeared by counsel. Therefore, this Court has personal jurisdiction over each Defendant.

---

[1] This is also tantamount to a suit against Pope County, Arkansas itself, as admitted by Defendants in their Motion to Dismiss (Dkt. No. 4, p. 1) and Brief in Support (Dkt. No. 5, p. 3).

**FIRST AMENDED COMPLAINT** – Page 1

3. This Court has subject matter jurisdiction over this case based upon diversity of citizenship pursuant to 28 U.S.C. § 1332, because Smart and Defendants are citizens of different states and the amount in controversy exceeds $75,000. Jurisdiction is also proper in this Court pursuant to the parties' contractual agreement, which allows for contract-related disputes between the parties to be litigated in courts within Arkansas.[2]

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because Defendants reside in this judicial district and division. 28 U.S.C. 83(a)(1). As with jurisdiction, venue is also proper in this Court pursuant to the parties' contractual agreement, which allows for contract-related disputes between the parties to be litigated in courts within Arkansas.

**Factual Background**

5. Smart provides inmate communications services to correctional facilities across the United States. The parties have mutually benefitted from a successful business arrangement for four years during which Smart has been and is the exclusive provider of certain inmate communication services to the Pope County Detention Center. However, after recently deciding it preferred to use another vendor for these services, Defendants have contrived a duplicitous, bad faith termination attempt in an effort to sidestep the parties' agreement and deprive Smart of its contractual rights, including its ability to realize the benefits of the parties' bargain and its significant investment in the parties' exclusive relationship.

---

[2] The language present in the parties' contractual agreements is such that the "In" doctrine is applicable to this case. Under this doctrine, "a forum selection clause referring to "courts in" a state imposes a geographic limitation, not one of sovereignty . . . . Hence the phrase "courts in" a state includes any court within the physical boundaries of the state, even if the court does not derive its power and authority from the sovereignty of the state. In short, the rule . . . is that a forum selection clause that specifies "courts of" a state limits jurisdiction to state courts, but specification of "courts in" a state includes both state and federal courts." *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1205-06 (9th Cir. 2011). That case, along with other authorities, supports the conclusion that the language of the parties' contractual agreements here should be read to allow suit in this Court.

**FIRST AMENDED COMPLAINT** – Page 2

6.     Beginning in March 2016 and culminating on April 15, 2016, Smart and the Pope County Sheriff's Office negotiated and executed a contract entitled Electronic Messaging System Agreement (the "Service Contract") under which Smart would provide certain inmate communications services to the Pope County Detention Center.  In accordance with the Service Contract, Smart installed electronic kiosks in the Pope County Detention Center at no charge to the Sheriff's Office, in exchange for the exclusive right to provide and derive revenue from messaging and related communication services at the jail, for a term continuing for three years thereafter.  A copy of the Service Contract is attached as **Exhibit A**.  Pope County Sheriff Shane Jones and then-Pope County Judge Ed Gibson signed the Service Contract on March 31, 2016, with Smart Communications President James Logan signing on April 15, 2016.

7.     Smart also provided the Sheriff's Office with a license to use its proprietary software to assist in numerous supervisory and investigative functions.  Finally, Smart trained the Sheriff's Office staff to operate both the kiosks and the features of the proprietary software.  Smart provided all of its equipment and services at no cost to Pope County or the Sheriff's Office.  The Service Contract expressly provided that there would be no payment or disbursement of funds by any party at Pope County in connection with Defendants' performance, and, as a result, no payment or disbursement of funds has been made by any party at Pope County relating to the parties' agreement.  *See, e.g.*, Service Contract (**Exhibit A**) at § 6.5 ("Contractor [Smart] agrees that Client [Pope County Sheriff's Office] does not incur any financial obligations to Contractor as a result of this Agreement.").  Rather, the Service Contract instead provided that the Pope County Sheriff's Office would be the recipient of regular monthly payments from Plaintiff based on the revenue it derived from providing its services.  *See, e.g.*, *id.* at § 6.3 ("Contractor agrees to pay Client a

**FIRST AMENDED COMPLAINT** – Page 3

commission of ten percent (10%) of gross revenues collected from messaging credits used . . . ."); *id.* at § 6.4 ("Contractor will pay commissions to Client on a monthly basis . . . .").

8. The original term of the Service Contract was to run from the time of its execution for three years, ending on or about March 31, 2019.

9. Beginning in August 2017, just over a year into the parties' relationship, the parties negotiated an addendum to the Service Contract for Smart to provide additional free services to the Pope County Detention Center, including its patented inmate postal mail elimination service, MailGuard®, with all accompanying mail processing labor at Smart's offsite facility, and an electronic "requests and grievances" system, in exchange for an extension of the term of the Service Contract through 2026. The addendum was reduced to writing and executed in a document entitled Electronic Messaging Agreement – MailGuard® Addendum (the "Addendum"), attached as **Exhibit B** (together, the Service Contract and the Addendum are referred to as the "Agreement"). The Addendum was signed on August 29, 2017, by Sheriff Shane Jones for Pope County and the Pope County Sheriff's Office, and on September 14, 2017, by Jon Logan, the Chief Executive Officer of Smart.

10. Similar to the Service Contract, the Addendum also expressly provided that there would be no payment or disbursement of funds by any party at Pope County. *See, e.g.,* Addendum (**Exhibit B**) at § 18 ("We [Smart] shall provide MailGuard at no cost to Customer . . ."); § 19 ("We shall provide all of the equipment and support services to operate the MailGuard system and transmit incoming routine postal mail into an electronic document to be delivered to the inmate on the SmartKiosk at no cost to Customer . . ."); § 25 ("Provider shall be solely responsible for the cost of maintaining the Mail Box designated by the Customer for incoming routine mail to be sent."); § 40 ("We [Smart] shall provide at no cost to the Customer [an] Inmate electronic general

and medical requests as well [as] electronic grievance forms via the SmartKiosk."). At no time has any payment or disbursement of funds been required, requested, or made by any party at Pope County relating to the parties' Agreement.

11. Sheriff Shane Jones was acting as an agent of Pope County when he executed the Addendum, under either express, implied, or apparent authority.

12. Sheriff Shane Jones represented, at least by way of his signature to the Addendum and his prior signature on the Service Contract (which was modified by the Addendum), that he had full authority to sign on behalf of and thereby bind Pope County and the Pope County Sheriff's Office. The County and Sheriff's Office, through Sheriff Jones, made the same representation. Indeed, by way of his signature on the Addendum, Sheriff Shane Jones expressly represented that he was a "duly authorized Officer[] and Agent[]" with full contracting authority. *See* **Exhibit B** at p. 4.

13. With the MailGuard® service provided for in accordance with the Addendum and at the Sheriff and Sheriff's Office's request and full authority, Smart began to process Pope County Detention Center inmates' physical mail and convert it to an electronic format to be delivered to inmates via the kiosks. Importantly, implementation of the MailGuard® service required full cooperation by the Sheriff's Office, including fulfilling numerous notice requirements and providing specific instructions to the public to send mail intended for inmates in its custody to Smart's secure facility in Florida (and not to the Pope County Detention Center), and providing regular inmate information to Smart that is critical to Smart's ability to electronically deliver the inmates' mail. *See, e.g.*, **Exhibit B** at § 33 ("Customer [Pope County Sheriff's Office] shall be responsible for informing inmates and inmates friends and family that all routine correspondence must be sent to the designated MailGuard Mail Box. Customer will include information regarding

the MailGuard system in the Inmate Handbook and in all other areas where information regarding the Inmate Mail Policy and Procedures are located."); *id.* at § 34 ("Customer will provide information regarding Customer's incoming postal mail policy, the MailGuard system and the MailGuard procedure for processing and/or disposing of all incoming mail and pictures in at least one location next to the inmate mailing address on the Customer's website and very clearly state that all incoming routine mail MUST be mailed to the MailGuard designated Mail Box."); *id.* at § 38 ("Customer will provide a list electronically twice each day of all inmates residing in the Customer Jail Facilities and their current housing assignment."); *see also generally id.* at §§ 11-16 ("Customer Responsibilities"); *id.* at §§ 32-39 ("Customer's Responsibilities").

14. Under the County's and Sheriff's Office's express authority, Smart processes the inmate's mail at its facility in Florida and forwards it to the inmates at the Pope County Detention Center in electronic form. Smart has been providing its MailGuard® service to the Pope County Sheriff's Office for over two and a half years.

15. Both parties have performed under the Agreement, including the Addendum, from execution up until the filing of this action. However, Defendants have recently repudiated the Agreement, notwithstanding the fact that Pope County and the Sheriff's Office expressly requested, agreed to, authorized, performed according to, and has benefited from Smart providing its MailGuard® service and other services for free to the Pope County Jail for several years. **Exhibit C** (March 16, 2020 letter from Pope County's counsel to Smart).

16. Through the letter contained in **Exhibit C**, Defendants have admitted that the original term of the Service Contract ended in 2019. Although the Addendum superseded that original end date, Defendants now assert that the Addendum, and therefore the Addendum's term extension, is invalid because it lacks the signature of the county judge of Pope County, and as such

the parties were not operating under the Addendum from April 2019 to April 2020. Instead, Defendants argue that the Service Contract automatically renewed for another 12 month period, allowing them to terminate the Service Contract at the end of March 2020 as the parties' only contractual agreement, despite the fact that Defendants accepted the full benefits of and performed in accordance with the Addendum during that time period.

17. Even though the Agreement does not terminate until April 15, 2026, Defendants intend to no longer go forward with the Agreement. Defendants have attempted to provide Smart a notice of termination of the Agreement, however, such attempts have been ineffective and improper pursuant to the terms of the Agreement.

18. Defendants have repudiated and breached the Agreement by indicating their intent to terminate the Agreement, stating that they want Smart's equipment (the kiosks) removed which would result in complete termination of Smart's services to the Pope County Detention Center before the term of the Agreement expires, as extended by the Addendum, and by other repudiatory and breaching conduct.

19. Upon information and belief, and notwithstanding the impropriety of its termination attempt, Defendants have not provided notice of this change in circumstances to inmates or their families. Although Defendants breached the Agreement by repudiating Smart's services, Smart nonetheless continues to receive mail directed to inmates of the Pope County Detention Center. Yet because Defendants want Smart's equipment removed from the Pope County Detention Center, Smart will not have a way to provide inmates with their mail. Further, Smart will continue to be inundated with its obligations under the Agreement notwithstanding the fact that Defendants abandoned their own obligations.

## Causes of Action

### Count I: Breach of Contract

20. Smart incorporates each preceding paragraph as if fully set forth herein.

21. Smart, Pope County, and the Pope County Sheriff's Office entered into a valid contract, the Service Contract, on April 15, 2016. Pope County Sheriff Shane Jones and then-Pope County Judge Ed Gibson signed the Service Contract on March 31, 2016, with Smart Communications President James Logan signing on April 15, 2016.

22. The Addendum modified the Service Contract by extending its initial term to April 15, 2022, including an automatic renewal term of four (4) years to April 15, 2026, and thereafter provided one-year renewal options, in exchange for Smart providing additional services and labor for free, including its patented MailGuard® service.

23. The Addendum is a valid and binding modification or revision of the original Service Contract, as expressly contemplated by the parties pursuant to section 9.14 of the Service Contract. Smart, Pope County and the Pope County Sheriff's Office agreed, in a writing signed by both parties and supported by an exchange of consideration, to the addition of Smart's MailGuard® and other services and an extension of the contractual term. At the time the Addendum was executed, it was reasonably certain and agreed to by both Smart and Defendants.

24. The county judge of Pope County was not required to sign the Service Contract or Addendum because neither required an expenditure, purchase, or other disposition of any county funds or resources.

25. Defendants' acceptance of the terms of the Addendum is evidenced, for example, by the signature of Pope County Sheriff Shane Jones, under his own authority and under his authority as an agent of Pope County, on the last page of the Addendum, **Exhibit B**, at p. 4, as

well as their performance under the Addendum over the past two years, including Defendants' instruction to the public to send mail directed to inmates in their custody to Smart's secure facility in Florida.

26. Smart and Defendants have both performed as required by the Addendum for nearly two and a half years, since August 29, 2017. **Exhibit B**.

27. Since August 29, 2017, Defendants have accepted the full benefits provided for in the Addendum they now allege is invalid, including the labor from Smart's highly trained and specialized MailGuard® staff and ongoing commission payments to the Sheriff's Office.

28. Defendants did not previously raise any concerns about whether or not they were required to comply with the Addendum until their March 16, 2020 letter. **Exhibit C**.

29. The Service Contract and Addendum require Defendants to perform under the Agreement until at least April 15, 2026.

30. At all times relevant, Smart performed under the Agreement as was required of it, or Smart's performance was otherwise excused.

31. Defendants have failed to perform under the Agreement by virtue of their wrongful repudiation and breaches evidenced by **Exhibit C** and other communications made to Smart that indicate Defendants wish to terminate the Agreement and remove Smart's equipment from the Pope County Detention Center, and by other repudiatory and breaching conduct. These actions demonstrate a present, positive and unequivocal refusal to perform.

32. Defendants' breaches have caused and will cause Smart damages in at least the form of multiple years of lost revenue expected under the Agreement, installation, maintenance, labor costs, and reliance damages. **Exhibit A** and **Exhibit B.**

33. Defendants do not have a valid defense to, or excuse from, their performance under the Agreement.

34. As a result of Defendants' actions, Smart has been damaged, continues to be damaged, and will be damaged in the future in an amount that will be proved at the trial of this action to be in excess of $75,000.

## Count II: Promissory Estoppel

35. Smart incorporates each preceding paragraph as if fully set forth herein.

36. In the alternative, Defendants are liable to Smart and should be bound to the Agreement under the doctrine of promissory estoppel.

37. Defendants made a promise to Smart that they would continue to use Smart's services until at least April 15, 2026. **Exhibit B.**

38. Defendants should reasonably have expected Smart to act in reliance on that promise.

39. Smart has in fact acted in reasonable reliance on Defendants' promise to its detriment by faithfully performing under the Service Contract for four years and the Addendum for over two years.

40. Injustice can be avoided only by enforcement of the Agreement, because Smart will be damaged in at least the form of multiple years of lost revenue, installation, maintenance, labor costs, and reliance damages if Defendants are allowed to escape their agreed-to obligations under the Agreement.

41. As a result of Defendants' actions, Smart has been damaged, continues to be damaged, and will be damaged in the future in an amount that will be proved at the trial of this action to be in excess of $75,000.

## Count III: Unjust Enrichment

42. Smart incorporates each preceding paragraph as if fully set forth herein.

43. In the alternative, Defendants are liable to Smart for restitution damages because they will be unjustly enriched if allowed to avoid their obligations under the Addendum and retain the benefits they have received from Smart.

44. Smart has conferred the benefit of its patented MailGuard® and other services directly upon Defendants with the understanding that Smart would be compensated for such services in the form of the revenue Smart would generate during the period of extension provided by the Addendum.

45. As part of the Agreement, Smart has regularly paid to Defendants 10% of the revenue made from its services provided to the Pope County Detention Center.

46. Now, after accepting these benefits from the MailGuard® and other services for more than two years after the execution of the Addendum, Defendants argue that the Addendum has been unenforceable from the outset.

47. Defendants currently retain all of the benefits provided to them under the Agreement, including the Addendum.

48. If the Addendum is unenforceable, then Defendants are not and were not entitled to the benefits of the services that Smart remitted to them through the patented MailGuard® and other services provided since the execution of the Addendum.

49. It would be unjust for Defendants to retain the benefits they received at the expense of Smart under a contract that they believe is unenforceable, especially since Defendants have paid nothing for Smart's services. Smart has incurred all of the expense and costs of its patented MailGuard® and other services, while Defendants have not incurred the expenses associated with

receiving, processing, and distributing mail to inmates at the Pope County Detention Center, including, but not limited to, expenses, risks, and liabilities associated with outside attempts to smuggle contraband into the Detention Center through the postal mail.  Therefore, Defendants must return to Smart all of the benefits they received from Smart related to Smart's patented MailGuard® and other services.

50. As a result of Defendants' actions, Smart has been damaged, continues to be damaged, and will be damaged in the future in an amount that will be proved at the trial of this action to be in excess of $75,000.

## Count IV: Fraud

51. Smart incorporates each preceding paragraph as if fully set forth herein.

52. Alternatively, Pope County, the Pope County Sheriff's Office, and Sheriff Shane Jones are liable to Smart for fraud.

53. Defendants made false representations and/or omissions of material facts concerning the Addendum, namely, that the county judge's signature was not required in order for the Addendum to be binding on the Pope County Sheriff's Office, and that Sheriff Shane Jones by himself, and as an agent of Pope County, had the authority to execute the Addendum as a valid and binding modification to the Service Contract between Pope County, the Pope County Sheriff's Office, and Smart.

54. If it is determined that the county judge's signature was required, which Smart denies, then the Sheriff's Office and Sheriff Jones knew at the time they made the above representations and omissions to Smart on behalf of Pope County and the Sheriff's Office that they were false.

55. These false representations and omissions were made with the intent to induce Smart to enter into the Addendum and to begin providing its additional services, including its patented MailGuard® service and accompanying labor to the Pope County Detention Center, at no cost to Pope County or the Pope County Sheriff's Office, and to allow the County and Sheriff's Office to cancel the Agreement at will – a provision that was not bargained for in the Agreement.

56. Smart justifiably relied on Defendants' false representations and omissions, because Smart was justified in believing that Sheriff Shane Jones had the power to bind the Pope County Sheriff's Office to a modification of the Agreement for services to the Pope County Detention Center.

57. Smart would not have entered into the Addendum except for Defendants' false representations and/or omissions, and instead would have further secured the county judge's signature to ensure the Addendum's enforceability had Defendants revealed their true intention and belief as to the enforceability of the Addendum without said additional signature.

58. As a result of Defendants' representations and omissions, Smart has been damaged, continues to be damaged, and will be damaged in the future in an amount that will be proved at the trial of this action to be in excess of $75,000.

## Demand for Jury Trial

59. Smart demands a jury trial on all issues so triable.

## Relief Requested

60. For all the foregoing reasons, Smart respectfully requests that this Court enter judgment against Defendants for breach of the Agreement, or alternatively for wrongful repudiation, unjust enrichment, and fraud, including but not limited to the following relief:

      a.    Compensatory, reliance, and special damages, including but not limited to loss of revenue;

      b.    Restitution;

      c.    Disgorgement;

      d.    Pre-judgment interest; and

      e.    Post-judgment interest.

61. Finally, Smart respectfully requests any and all other remedies and any and all other relief, in law or equity, to which it shows itself justly entitled.

Respectfully submitted,

/s/ *Darby V. Doan*
Darby V. Doan
Arkansas Bar No. 96064
Jennifer H. Doan
Arkansas Bar No. 96063
Robert C. Dalby
Arkansas Bar No. 2019221
HALTOM & DOAN
6500 Summerhill Rd., Suite 100
Texarkana, Texas 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
E-Mail: jdoan@haltomdoan.com
E-Mail: ddoan@haltomdoan.com
E-Mail: rdalby@haltomdoan.com

**ATTORNEYS FOR SMART COMMUNICATIONS COLLIER, INC.**

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule 5.1, which shall provide electronic service to all counsel of record.

/s/ *Darby V. Doan*
Darby V. Doan