# Exhibit A

# ELECTRONIC MESSAGING SYSTEM AGREEMENT

**THIS AGREEMENT** by and between the Pope County Sheriff's Office, with principal offices located at #10 County Complex Circle, Russellville, AR 72802, hereinafter referred to as "CLIENT", and Smart Communications Collier, Inc. or its designated assignee, with principal offices located at 4522 W North B St., Tampa, Florida 33609, hereinafter referred to as "CONTRACTOR", is entered into as of the _15_ day of _April_, 2016.

### WITNESSETH:

**WHEREAS,** Contractor desires to provide Client, at no cost to Client, a complete two-way, closed circuit, secure electronic messaging system for the inmates at the Client Jail Facility located at #10 County Complex Circle, Russellville, AR 72802 ("Facilities"), and

**WHEREAS,** Contractor is willing to provide all of the equipment and support services to operate the electronic messaging system at no cost to Client, including the kiosks, software, maintenance and support for the system, and

**WHEREAS,** Client has agreed to provide for the installation of Category 5e network data cabling and electrical service to each kiosk, and

**WHEREAS,** Contractor is willing to provide Client with a percentage of the fees collected from the users of the electronic messaging system, and

**WHEREAS,** Client desires to provide the inmates of the Client Jail Facilities with this electronic messaging system and is willing to provide Contractor with access to Client Jail Facilities for the purposes of installing and maintaining this electronic messaging system.

**NOW THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth, the parties hereto, intending to be legally bound, agree as follows:

### SECTION 1: ENGAGEMENT OF CONTRACTOR

1.1.    Client hereby engages Contractor to provide, on an exclusive basis, a fully functional electronic messaging system to the inmates residing in the Client Jail Facilities. The parties agree that this Agreement shall be governed by all federal, state and county laws applicable to Pope County, Arkansas.

### SECTION 2: CONTRACTOR'S RESPONSIBILITIES

2.1.    Contractor will provide at no cost to Client a fully functional electronic messaging system for the inmates of the Client's Jail Facilities. Contractor is exclusively responsible

for providing all of the hardware kiosks, the software to include the operating systems and application software needed for operation of the system.

2.2. Contractor will provide at no cost to Client the kiosk hardware.

2.3. Contractor will provide at no cost to Client the labor, hardware, and software needed for the continued operating and maintenance of the electronic messaging system.

2.4. Contractor is responsible for all the costs and future costs associated with any modification, reconfiguration, or upgrade of the electronic messaging system at the Client Jail Facilities. These costs do not include the costs of the actual electrical power.

2.5. Contractor will maintain records for a period of seven (7) years from the date the record is made. Upon request, Contractor will provide Client with copies of the requested record for the purpose of inspecting, examining, and auditing the Contractor's records directly relevant to Client.

2.6. Contractor will provide each inmate of the Client Jail Facilities, two (2) message credits per week at no charge to satisfy the needs of indigent inmates. Client grants Contractor exclusive rights to sell advertising space within the electronic messaging system provided said advertising complies with all applicable laws. All advertisements placed on the system must include a disclaimer that it is a paid advertisement and its inclusion on the system does not constitute an endorsement or recommendation by Client.

2.7. Contractor will provide Client with the capability of monitoring and reviewing all electronic messages and attachments sent through the electronic messaging system, except those messages deemed to be privileged under law between attorney and client. Further, Contractor will maintain a record of all electronic messages sent through the electronic messaging system for a period of Seven (7) years from the time the message is sent.

2.8. The work to be performed by Contractor under this Agreement may, at its discretion, be performed directly by it or wholly or in part through a subcontractor of its choosing.

## SECTION 3: CLIENT'S RESPONSIBILITIES

3.1 Client will provide Contractor with access to the Client Jail Facilities and space within the Facilities, subject to operational security requirements, for the purposes of maintaining of the electronic messaging system. Emergency access to the system will be granted as needed to Contractor Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hour notice from Contractor.

3.2. Client will include information regarding the Smart Jail Mail System in the Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

3.3. Client will provide information regarding Smart Jail Mail messaging system in at least one location next to the inmate mailing address on the Client website, with a link to the Smart Jail Mail website.

3.4. Upon completion of installation and appropriate system testing, Client will allow the electronic messaging to go live within forty-eight (48) hours notice of system availability.

3.5. Client will provide a list electronically twice each day of all inmates residing in the Client Jail Facilities and their current housing assignments. Contractor will use this listing to insure that each inmate is authorized to use only those kiosks appropriate to their housing assignment. (Tiger Commissary will be providing this information through the Tiger accounting system while their commissary contract is in place).

3.6. Client will give prompt notice to Contractor of any trouble or irregularity in the functioning of any individual kiosk in particular or the electronic messaging system as a whole.

3.7. Client will be responsible for providing for the installation of network data cabling and electrical service to each kiosk location. Network data cable should be Category 5e and appropriately rated for the areas where it is run (e.g. general, plenum, riser, etc. if required by applicable building code). Electrical service required is grounded 120 volt which will be hard-wired directly into the kiosk enclosure.

## SECTION 4: TITLE

4.1. The Smart Jail Mail System, including kiosks, hardware, software, networking, cabling, etc., shall at all times remain the property of the Contractor.

4.2. Upon termination of this Agreement, Contractor shall remove the Smart Jail Mail System except for the cabling and conduit which shall become the property of the Client.

4.3. Upon removal of the Smart Jail Mail System from the Client Jail Facilities, Contractor will insure that all Client specific information, forms and graphics are removed from all hardware and software used in connection with the System within 60 days of the effective contract termination date.

## SECTION 5: TERM AND TERMINATION

5.1 This Agreement shall commence on the effective date and shall continue for a period of three (3) years from the date of system going live. After this original three (3) year term, this Agreement shall automatically renew each year for a one year term. This agreement may be terminated after the original three (3) year term upon written notice at least sixty (60) days prior to the expiration of the current term.

5.2. Either party may terminate this Agreement by giving the other party thirty (30) calendar days written notice on any of the following:

    5.2.1. The other party's failure to comply with any provision of the Agreement within thirty (30) calendar days after receipt of written notification and be given the opportunity to cure/comply with the provision.

    5.2.2. Mutual agreement of both parties.

5.3. Either party may terminate this Agreement immediately upon thirty (30) calendar days written notice to the other upon the occurrence of any of the following special situations:

    5.3.1. In the event there is a change in the Office of Sheriff due to an election, resignation or death and the Sheriff-elect makes the decision not to continue this Agreement.

    5.3.2. Insolvency, bankruptcy, or receivership of Contractor.

    5.3.3. Failure of contractor's system to function as described above.

    5.3.4. Failure of contractor to maintain functionality of system as described above.

## SECTION 6: FINANCIAL ARRANGEMENTS

6.1. Client agrees to provide the general population inmates in the Client Jail Facilities with access to the electronic messaging system at the same time the inmate phone system is available for use; however, due to security and disciplinary concerns, Client reserves the exclusive right to determine the time of access, the location of access, the method of access, and identification of those individual inmates who may access the electronic messaging system.

6.2. Contractor agrees to provide the electronic messaging service to inmates at the Client Jail Facilities for a cost of $.50 (fifty cents), per message transmitted through the electronic messaging system. Not including indigent and promotional messaging.

6.3. Contractor agrees to pay Client a commission of ten percent (10%) of gross revenues collected from message credits used, excluding non-paid credits to indigents and non-paid promotional credits. Said commission is based upon Contractor providing service to Client which includes secure two way messaging between inmates and public users; jail administrative services, including customized information routing of grievances, medical request forms, etc., to appropriate units with memorialized no charge two-way communication; commissary menu and electronic ordering as well as all maintenance to system, including price changes, product drop and add, etc.; and all administrative tools.

6.4.    Contractor will pay commissions to Client on a monthly basis, no later than thirty (30) calendar days from the end of each calendar month for which services are provided, together with all appropriate reports necessary to substantiate the amount remitted.

6.5.    Contractor agrees that Client does not incur any financial obligations to Contractor as a result of this Agreement.

6.6.    Should the parties mutually agree to a change in the scope of services provided under this Agreement, a mutually agreed to adjustment in the commission rate paid will be allowed.

## SECTION 7: EMPLOYEES

7.1.    Contractor represents that it has, or will secure at its own expense, all personnel required in performing its obligations under this Agreement. Such personnel shall not be employees of Client or have any contractual relationship with Client. All of the services required hereunder will be performed by the Contractor or under its supervision and all personnel engaged in the work shall be fully qualified to perform such services.

7.2.    Client acknowledges that the Contractor is an independent contractor and nothing in this Agreement is intended nor shall be construed to create an agency relationship, and employer/employee relationship, a joint venture relationship or any other relationship allowing Client to exercise control or discretion over the manner by which Contractor performs hereunder.

7.3.    Contractor expressly agrees that it shall be solely responsible for supervising its employees, that it shall comply with all rules, regulations, orders, standards and interpretations promulgated pursuant to the OSHA Act of 1970, including but not limited to training, recordkeeping, providing personal protective equipment, lock/tagout procedures, material safety data sheets and labeling.

7.4.    Contractor certifies that neither it nor any subcontractors used to accomplish its obligations hereunder, shall employ unauthorized aliens. Client shall consider the employment of unauthorized aliens a violation of Section 274A (e) of the Immigration and Nationality Act (8 U.S.C. 1324a). Contractor agrees that such violation shall be cause for the unilateral and immediate termination of this Agreement by Client.

7.5.    Contractor certifies that in accordance with the provisions of Title VII of the 1968 Civil Rights Act as amended by the Equal Employment Opportunity Act of 1972 and Executive Order 11914, that neither it nor any subcontractors used to accomplish its obligations hereunder discriminate on the basis of race, color, sex, religion, age, national origin or disability in their employment practices.

7.6.    Client will take all reasonable and customary steps necessary to screen all Contractor's employees providing services requiring entry into the Client Jail Facilities,

5

up to and including conducting law enforcement background checks, to provide that such personnel will not constitute a security risk to the institution or the inmates and further, Contractor will cooperate as required to execute this provision up to an including providing a Federal Form I-9, Employment Eligibility Verification, on all Contractor's employees and all subcontractor's employees needing admission to the Client Jail Facilities.

7.7.  Each party agrees that it shall be solely responsible for the negligent or wrongful acts of its employees. However, nothing contained herein shall constitute a waiver by Client of its sovereign immunity or the provisions of Section 768.28, Florida Statutes.

## SECTION 9: MISCELLANEOUS

9.1.  Public Entity Crime. Contractor confirms its understanding that a "public entity crime" as defined in Paragraph 287.133(1)(g), Florida Statutes, means a violation of any state or federal law by a person with respect to and directly related to the transaction of business with any public entity or with an agency or political subdivision of any other state or of the United States, including but not limited to, any bid or contract for goods or services to be provided to any public entity or an agency or political subdivision of any state or of the United States and involving antitrust, fraud, bribery, collusion, racketeering, conspiracy, or material misrepresentation. Contractor hereby certifies that neither its officers, directors, executives, partners, employees, members, nor agents who are active in the management of Contractor have been charged with and convicted of a public entity crime subsequent to July 1, 1989.

9.2.  Waiver of Breach. The waiver by either party of a breach or violation of any provision of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of the same or other provision hereof.

9.3.  Compliance with Laws. Contractor shall comply with all Federal, State and local laws, rules, and regulations applicable to the services or payments for services under this Agreement.

9.4.  Governing Law. The parties mutually agree that any litigation arising hereunder shall be brought and completed in Pope County, Arkansas and other pertinent Arkansas courts and further that neither party shall seek to remove such litigation from Circuit Courts or Appellate Courts of the State of Arkansas by application of conflict of laws or any other removal process to any Federal Court or court not in Arkansas.

9.5.  Attorney Fees. In the event of litigation concerning this Agreement, the Client and Contractor shall each be responsible for their own attorney's fees and costs.

9.7.  Drug-Free Workplace. Contractor and any subcontractors used in the performance of the responsibilities listed herein must maintain a drug-free workplace policy and said policy must include pre-employment testing of their employees.

9.8. <u>Completeness of Contract</u>. This Agreement and any additional or supplementary document or documents incorporated herein by specific reference contain all the terms and conditions agreed upon by the parties hereto, and no other agreements, oral or otherwise, regarding the subject matter of this Agreement or any part thereof shall have any validity or bind any of the parties hereto.

9.9. <u>Force Majeure</u>. Contractor will not be deemed in violation of this Agreement if it is prevented from performing any of its obligations hereunder for any reason beyond its control, including without limitations, strikes, inmate disturbances, failure of Client to provide proper security services, acts of God, civil or military authority, acts of public enemy, war, terrorism, accidents, fires, explosions, earthquakes, floods, or any similar cause beyond the reasonable control of either party.

9.10. <u>Assignment</u>. Contractor may assign this Agreement to any parent, successor, or subsidiary corporation without the express written consent of Client.

9.11. <u>Severability</u>. In the event any provision of this Agreement is held to be unenforceable for any reason, the unenforceability thereof shall not effect the remainder of the Agreement which shall remain in full force and effect and enforceable in accordance with its terms.

9.12. <u>Matters to be Disregarded</u>. The titles of the several sections, subsections and paragraphs set for in this Agreement are inserted for convenience of reference only and shall be disregarded in construing or interpreting any of the provisions of this Agreement.

9.13. <u>Notices</u>. Any notices, payments or reports required by this Agreement shall be sufficient if sent by the parties hereto in the United States mail, postage paid, to the addresses noted below:

    9.13.1. As to Client for notices and reports:
    Shane Jones, Sheriff
    Pope County Sheriff's Office
    #10 County Complex Circle
    Russellville, AR 72802

    9.13.2 As to Contractor:
    James Logan, President
    Smart Communications Collier, Inc.
    4522 W North B St.
    Tampa, FL 33609

9.14. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the parties and is intended as a complete and exclusive statement of the promises, representations, negotiations, discussions and agreements that have been made in connection with the subject matter hereof. This Agreement may be amended or revised only in writing and signed by all the parties.

IN WITNESS WHEREOF, the parties have set their hands and seals hereto as of the day and year first above written.

**POPE COUNTY SHERIFF'S OFFICE**

By: _[signature]_____     Date: 3-31-16
Shane Jones, Sheriff

By: _[signature]_____     Date: 3-31-16
Jim Ed Gibson, Judge

Witness: _____

**SMART COMMUNICATIONS COLLIER, INC.**

By: _[signature]_____     Date: 4-15-16
James Logan, President

Witness: _____

8