# Exhibit B

## ELECTRONIC MESSAGING AGREEMENT -MAILGUARD ADDENDUM

This Addendum and Extension Agreement is between Pope County Jail, hereinafter referred to as "you" or "Customer," and Smart Communications Collier, Inc. and/or its designated subsidiary or assignee, with principal offices located at 4522 W North B St., Tampa, Florida 33609, hereinafter referred to as "We," Us," or "Provider."

This Addendum and Extension is part of and governed by the Electronic Messaging Agreement, the "Original Agreement", executed by the Parties on April 15, 2016. The terms and conditions of the Original Agreement are incorporated herein by reference.

The Customer's Facility Name and address is: Pope County Sheriff's Office #10 County Complex Circle, Russellville, Arkansas 72802

WHEREAS, the Parties entered in an Electronic Messaging System Agreement on June 10, 2015, the "Original Agreement".

WHEREAS, the Parties hereby agree to extend the term of the Original Agreement in accordance with the terms provided herein.

In consideration of the mutual covenants contained herein, both of the Parties mutually covenant and agree as follows:

The Original Agreement, original term and extension will end on April 15, 2019.

The Parties agree to extend the Original Agreement for three (3) years through April 15, 2022 which will begin immediately upon the execution of this document. The contract will then automatically renew for four (4) years. After this four (4) year extension, this Agreement shall automatically renew annually for additional one (1) year terms unless either Party notifies the other Party with written notice of non-renewal at least ninety (90) days prior to the expiration of the then current term.

This Addendum and Extension binds and benefits both Parties and successors or assigns. This document, including the Original Agreement dated April 15, 2016, is the entire agreement between the Parties.

The Parties wish to add the following language to the Original Agreement:

Provider shall install and/or provide the following Hardware, Software, Systems and Services:

### Electronic Messaging

1. We will provide at no cost to Customer a fully functional electronic messaging system for the inmates of the Customer's Jail Facilities. We are exclusively responsible for providing all of the hardware Kiosks, the software to include the operating systems and application software, and all networking requirements needed for operation of the system.

2. We will provide at no cost to Customer the labor for the installation of the electronic messaging system.

3. We will provide at no cost to Customer the labor, hardware, and software needed for the continued operating, maintaining, and networking of the electronic messaging system.

4. Provider is responsible for all the costs and future costs associated with any modification, reconfiguration, or upgrade of the electronic messaging system at the Customer Jail Facilities. These costs do not include the costs of the actual electrical power.

5. Provider will maintain records for a period of seven (7) years from the date the record is made. During the term of this Agreement and upon request, we will provide Customer with copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to Customer.

6. Provider will provide each inmate of the Customer Jail Facilities, two (2) message credits per week at no charge to satisfy the needs of indigent inmates.

7. We will provide Customer with the capability of monitoring and reviewing all electronic messages and attachments sent through the electronic messaging system, except those messages deemed to be privileged under law between attorney and client. Further, Provider will maintain a record of all electronic messages sent through the electronic messaging system for a period of seven (7) years from the time the message is sent.

8. Friends and Family can access the electronic messaging and photo delivery system via the Smartjailmail.com website.

9. Electronic Messaging. Each email message is billed at one credit ($0.50).

10. Photo Delivery Service. Each approved photo is billed at two credits ($1.00).

## Customer's Responsibilities.

11. Customer will provide us with access to the Customer Jail Facilities and space within the Facilities, subject to operational security requirements, for the purposes of installing, networking, and maintaining the electronic messaging system. Emergency access to the system will be granted as needed to Contractor Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hour notice from Contractor.

12. Customer will include information regarding the Smart Jail Mail System in the Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

13. Customer will provide information regarding Smart Jail Mail messaging system in at least one location next to the inmate mailing address on the Customer website, with a link to the SmartJailMail.com website.

14. Upon completion of installation and appropriate system testing, Customer will allow the electronic messaging to go live within forty-eight (48) hours' notice of system availability and shall allow inmates access to the Kiosks and systems in keeping with the hours inmates have access to telephones.

15. Customer will provide a list electronically twice each day of all inmates residing in the Customer Jail Facilities and their current housing assignments. Provider will use this listing to ensure that each inmate is authorized to use only those kiosks appropriate to their housing assignment.

16. Customer will give prompt notice to Provider of any trouble or irregularity in the functioning of any individual kiosk in particular or the electronic messaging system as a whole.

## MailGuard™ Patent Pending Postal Mail Elimination System

17. Provider is the exclusive licensee of MailGuard™, the patent pending postal mail elimination system.

18. We shall provide MailGuard™ at no cost to Customer. MailGuard™ converts regular incoming postal mail into an electronic document that is delivered to the inmate recipient via the SmartKiosk™ or SmartKiosk™ within the Customer Jail Facility; and

19. We shall provide all of the equipment and support services to operate the MailGuard™ system and transmit incoming routine postal mail into an electronic document to be delivered to the inmate on the SmartKiosk™ at no cost to Customer; and

20. Customer Jail Facility shall provide the inmate the option of designating MailGuard as their Agent for processing incoming routine postal mail. For purposes of this contract, "routine mail" means all regular incoming correspondence between inmates, family and friends and excludes all legal mail, packages, books, magazines, periodicals and religious mail. All legal mail, packages, books, magazines, or other non-routine inmate mail will still be sent to the jail for delivery.

21. MailGuard will only integrate with and transmit incoming routine mail to the SmartKiosk™ or SmartKiosk™.

22. Provider is responsible for all the future costs associated with any modification, reconfiguration, or upgrade of the MailGuard™ system at the Customer Jail Facilities. These costs do not include the costs of the actual electrical power.

23. MailGuard shall become the Inmates designated Agent to process and electronically deliver incoming routine inmate mail pursuant to Customer's mail policy which shall promote the intent of this Agreement.

24. Customer will instruct and advertise on its website that all incoming routine mail must be sent to the designated Mail Box for electronic delivery via the MailGuard™ system.

25. Provider shall be solely responsible for the cost of maintaining the Mail Box designated by the Customer for incoming routine mail to be sent.

26. Provider will retrieve incoming routine mail from the designated Mail Box and process and transmit that mail in an expeditious manner.

27. Provider will shred all processed mail after 30 days unless the Customer requests in writing to Provider that all or particular inmate mail must be stored. All mail stored for more than thirty (30) days must be stored in a separate storage facility controlled by Provider and the Customer shall be billed monthly for the storage amount.

28. The MailGuard™ public website will allow inmates to log into their account and retrieve electronic copies of their processed incoming routine mail for twelve (12) months from the date of their release from the Customer's Jail Facility.

29. Provider will maintain electronic records for a period of seven (7) years from the date of the inmate's release from the Customer's Jail Facility. During the term of this Agreement and upon request, we will provide Customer with electronic copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to Customer's Jail Facility.

30. MailGuard will provide Customer with the capability of monitoring and reviewing all electronic mail sent through the MailGuard™ system, except those messages deemed to be privileged under law between attorney and client.

31. The work to be performed by MailGuard under this Agreement may, at its discretion, be performed directly by it wholly or in part through a subcontractor of its choosing.

## Customer's Responsibilities

32. Customer shall provide the inmate the option of designating MailGuard as their Agent for processing incoming routine postal mail.

33. Customer shall be responsible for informing inmates and inmates friends and family that all routine correspondence must be sent to the designated MailGuard Mail Box. Customer will include information regarding the MailGuard™ system in the Inmate Handbook and in all other areas where information regarding the Inmate Mail Policy and Procedures are located.

34. Customer will provide information regarding Customer's incoming postal mail policy, the MailGuard™ system and the MailGuard procedure for processing and/or disposing of all incoming mail and pictures in at least one location next to the inmate mailing address on the Customer's website and very clearly state that all incoming routine mail MUST be mailed to the MailGuard designated Mail Box.

35. Customer will instruct on its website that all incoming routine mail must be sent to the designated Mail Box for electronic delivery via the MailGuard™ system and display information regarding the Customer's incoming postal mail policy, the MailGuard™ system and the MailGuard procedure for processing and/or disposing of all incoming mail and pictures.

36. Should the Customer receive incoming routine mail instead of the designated Mail Box, the Customer will be responsible for the delivery of said mail to MailGuard for processing.

37. Upon completion of installation and appropriate system testing, Customer will allow the MailGuard™ system to go live within forty-eight (48) hours' notice of system availability.

38. Customer will provide a list electronically twice each day of all inmates residing in the Customer Jail Facilities and their current housing assignments.

39. Customer will give prompt notice to MailGuard of any trouble or irregularity in the functioning of the MailGuard™ system.

### Grievances, General and Medical Requests

40. We shall provide at no cost to the Customer and Inmate electronic general and medical requests as well as well as electronic grievance forms via the SmartKiosk.

41. Our System presents Inmates with a list of available forms, and once a form has been selected and submitted, it is automatically routed to the appropriate person or department for processing. Automated timers, alerts, and escalation paths help to ensure that requests are handled in a timely manner to ensure compliance with internal policies and accreditation standards (if applicable). Each type of request has a suite of controls to fine-tune policies around who can submit which requests, how often, and a variety of other restrictions to help prevent staff from becoming overloaded. Requests can be easily reassigned to another individual or department as needed, and like everything else, all actions and access to these systems are logged and audited. Reports are available to show request aging, who is answering requests on time (or not), and one-click compliance reports to aide with accreditation reporting.

### Rules, Regulations & Communications

42. The SmartKiosk is designed to provide at the Sheriff's Office discretion a mandatory electronic signature acknowledging that the inmate has received an electronic copy of the Inmate Handbook. The Inmate Handbook is always available on the SmartKiosk for easy reference. Changes and additions to the handbook or other rules and regulations can be changed easily by staff members. Inmates also have access to the PREA Act at all times on the SmartKiosk. The SmartKiosk has the ability for the Administrators to post announcements, communications and notices to the entire inmate population, or certain housing units or individual inmates. A common posting is both the PREA Act and everyday items such as menus.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by the duly authorized Officers and Agents and have set their hands and seals hereto as of the day and year written below.

Customer: Pope County Sheriff's Office

By: _____

Name: Shane Jones

Title: Sheriff

Date: _8-29-17_

Email: _Sjones@popcoso.net_

Notice Address:
#10 County Complex Circle
Russellville, AR 72802

Provider: Smart Communications Collier, Inc.

By: _____

Name: ~~James P. Logan~~  JON LOGAN

Title: ~~President~~  CEO

Date: _9/14/17_

Email: jim.logan@smartjailmail.com

Notice Address:
4522 W. North B Street
Tampa, FL 33609